IN THE MATTER OF DORAN

(PEOPLE v DORAN)

Docket No. 58698. Argued June 9, 1977 (Calendar No. 18).—Decided
October 4, 1977. Rehearing denied 402 Mich 951. Certiorari
granted by the Supreme Court of the United States April 17,
1978.

Harold W. Doran is detained in the Bay County jail on a gover-
nor's warrant for extradition to Arizona on alternative charges
of theft of a motor vehicle or theft by embezzlement. He
brought an action for *habeas corpus* in the Bay Circuit Court,
John X. Theiler, J., to contest his detention, and the action was
dismissed. The Court of Appeals, V. J. Brennan, P. J., and
Bronson and Beasley, JJ., denied his application for leave to
appeal (Docket No. 28507), and dismissed his subsequent com-
plaint for *habeas corpus* in the Court of Appeals (Docket No.
30516). Doran appeals, asserting that he may not be extradited,
because the governor's warrant for his extradition was issued
more than 90 days after his arrest, and that the warrant and
affidavits supporting the requisition by the Governor of Arizona
are insufficient because they do not show probable cause. *Held:*

1. The Uniform Criminal Extradition Act limits the period of
confinement following arrest as a fugitive to a maximum of 90
days. The purpose of this limit is to prevent unreasonably
lengthy periods of confinement pending consummation of extra-
dition proceedings by the demanding state, but the act was not
intended to restrict the period within which the Governor may
issue his rendition warrant. Although a fugitive may be enti-
tled to discharge from confinement or bail after 90 days, he
may nevertheless be re-arrested and extradited pursuant to a
valid governor's warrant issued subsequent to the 90-day pe-
riod.

2. The State of Michigan may not arrest, detain, and render
to the demanding state a person accused of crime unless the
demanding state submits an indictment or judicial determina-
tion of probable cause, or where there has been none, adequate

REFERENCES FOR POINTS IN HEADNOTES

[1] 31 Am Jur 2d, Extradition §§ 60–63.
[2, 4, 5] 31 Am Jur 2d, Extradition § 53.
[3] 31 Am Jur 2d, Extradition §§ 36, 39.

factual affidavits reflecting probable cause. The affidavits should be in such form as would support a finding of probable cause for the issuance of an arrest or search warrant under the Fourth Amendment decisions of the Supreme Court of the United States. The extradition statute requires that the indictment, information or affidavit made before a magistrate of the demanding state must substantially charge the person demanded with having committed a crime under the law of that state. Where there has been no indictment or judicial determination of probable cause in the demanding state, a requirement that the demanding state's affidavit set forth facts which support a determination of probable cause safeguards citizens and other persons found in the asylum state against abuse of the extradition process. The holding in this case does not apply to an indictment, but only to an affidavit.

3. In the case at bar, there is no indictment or document reflecting a prior judicial determination of probable cause. The Arizona complaint and arrest warrant are both phrased in conclusory language which simply mirrors the language of the Arizona statutes, and their supporting affidavits fail to set out facts which could justify a Fourth Amendment finding of probable cause to charge a crime. The defect has not been cured. Mr. Doran has been in custody since December 18, 1975.

The judgment of the trial court is reversed and the release of the prisoner is ordered forthwith.

1. EXTRADITION—GOVERNOR'S WARRANT—CONFINEMENT—90-DAY LIMIT—UNIFORM CRIMINAL EXTRADITION ACT.

A fugitive is entitled under the Uniform Criminal Extradition Act to be discharged from confinement or bail 90 days after his arrest as a fugitive if no valid governor's warrant has issued; he may, nevertheless, be re-arrested and extradited pursuant to a valid governor's warrant issued subsequent to the 90-day period (MCL 780.14, 780.16; MSA 28.1285[14], 28.1285[16]).

2. EXTRADITION—PROBABLE CAUSE—GOVERNOR'S REQUISITION—AFFIDAVIT.

A governor's requisition for the extradition of a fugitive must be supported by a showing of probable cause; absent a grand jury indictment or a judicial determination of probable cause, the affidavit accompanying the governor's requisition should contain more than conclusory statements and should be in a form which would support an arrest or search warrant under the Fourth Amendment decisions of the Supreme Court of the United States (US Const, Am IV).

3. EXTRADITION—GOVERNOR'S REQUISITION—AFFIDAVIT—PROBABLE CAUSE.

The Uniform Criminal Extradition Act requires that the indictment, information or affidavit made before a magistrate of the demanding state must substantially charge the person demanded with having committed a crime under the law of that state (MCL 780.3; MSA 28.1285[3]).

4. EXTRADITION—INDICTMENT—PROBABLE CAUSE.

The State of Michigan may not arrest, detain, and render to the demanding state a person accused of a crime unless the demanding state submits an indictment or judicial determination of probable cause, or where there has been none, adequate factual affidavits reflecting probable cause.

5. EXTRADITION—GOVERNOR'S REQUISITION—PROBABLE CAUSE.

An Arizona complaint and arrest warrant which are phrased in conclusory language which simply mirrors the language of the Arizona statutes, and supporting affidavits which fail to set out facts which could justify a Fourth Amendment finding of probable cause to charge a crime are not sufficient ground for extradition of a fugitive to Arizona.

*Eugene C. Penzien,* Prosecuting Attorney, for the people.

*State Appellate Defender Office* (by *Kathleen M. Cummins)* for Harold W. Doran.

BLAIR MOODY, JR., J. On December 18, 1975, defendant was arrested in Bay City, Michigan, and charged with receiving and concealing stolen property. MCLA 750.535; MSA 28.803. The charge arose out of defendant's possession of a truck in which he had driven to Michigan from Arizona.

The Bay City Police immediately notified the authorities in Maricopa County (Phoenix), Arizona. On January 7, 1976, the Arizona authorities issued a warrant for defendant's arrest charging theft of a motor vehicle or, in the alternative, theft by embezzlement. Ariz Rev Stat (ARS) 13-672(A), 13-1645, 13-661–13-663, 13-671(A); ARS 13-682, 13-688.

On January 12, 1976, defendant was arraigned in Michigan as a fugitive. The Bay City charge was eventually dismissed. However, the time of defendant's confinement as a fugitive was extended by the Bay County magistrate to allow additional time for his arrest to be made under a warrant of the Governor of Michigan upon a requisition of Arizona's Governor.

The Uniform Criminal Extradition Act, of which both Michigan and Arizona are signatories, MCLA 780.1–780.31; MSA 28.1285(1)–28.1285(31); ARS 13-1301–ARS 13-1328, limits the period of confinement following arrest as a fugitive to 30 days with a permissive extension period of 60 days. MCLA 780.14, 780.16; MSA 28.1285(14), 28.1285(16).

On February 11, 1976, Arizona issued a requisition for extradition. The requisition was accompanied by the original complaint and warrant, plus two supporting affidavits. On March 22, 1976, a governor's warrant was issued. Defendant was arraigned thereon on March 29, 1976, some 102 days after his arrest on the Bay County charge, but well within 90 days after the issuance of the Arizona warrant on January 7, 1976, and defendant's arraignment on the fugitive warrant on January 12, 1976.

The defendant twice petitioned the arraigning court for a writ of *habeas corpus* attacking the validity of the governor's warrant on the grounds that it was not issued in conformity with the Uniform Criminal Extradition Act. That court denied both writs. The Court of Appeals denied both defendant's application for leave to appeal the first *habeas corpus* petition and defendant's original *habeas corpus* petition subsequently filed in the Court of Appeals. This Court granted leave

to appeal on November 1, 1976. 397 Mich 886 (1976).

## I

Defendant initially maintains that he must be discharged because the governor's warrant issued more than 90 days after his original arrest. Defendant claims that while he was nominally arrested on December 18, 1975, on the Michigan charge of receiving and concealing stolen property, that arrest was a pretext. In actuality, defendant contends, he was held as a fugitive. Therefore, he is entitled to be discharged since more than 90 days elapsed after his original arrest before the governor's warrant issued on March 22, 1976.

We do not agree. Even if defendant is correct in his factual premise that the Michigan charge was a pretext and he was entitled to be released after 90 days, he is still subject to extradition.

There is ample authority for the proposition that although a fugitive is entitled to be discharged from confinement or bail upon expiration of the 90-day period, he or she may, nevertheless, be extradited pursuant to a valid governor's warrant issued subsequent to the expiration of the 90-day period. *People ex rel Green v Nenna,* 53 Misc 2d 525; 279 NYS2d 324 (1965); *aff'd* 24 AD2d 936; 264 NYS2d 211 (1965), *aff'd* 17 NY2d 815; 271 NYS2d 267; 218 NE2d 311 (1966); *Miller v Warden, Baltimore City Jail,* 14 Md App 377; 287 A2d 57 (1972).

In *People ex rel Gummow v Larson,* 35 Ill 2d 280, 282; 220 NE2d 165, 167 (1966), the court reasoned thus:

"The purpose of these sections of the extradition law is to prevent unreasonably lengthy periods of confine-

ment of fugitives pending consummation of extradition proceedings by the demanding State. [Citations omitted.] There is, however, no indication of any legislative intent to restrict the period within which the Governor * * * may issue his rendition warrant to the period within which the court which issues the fugitive warrant may commit the accused or require him to give bond."

Therefore, even if defendant was entitled to be released from the confinement which followed his original arrest, it is clear that he could be re-arrested on the strength of the subsequent governor's warrant.

## II

Defendant next maintains that he cannot be extradited where the demanding state's warrant and affidavits supporting the requisition for the Michigan governor's warrant do not reflect an adequate showing of probable cause.

We agree. In *Kirkland v Preston,* 128 US App DC 148, 152, 154–155; 385 F2d 670, 674, 676–677 (1967), the United States Court of Appeals for the District of Columbia held that a governor's requisition must be supported by a showing of probable cause. Absent a grand jury indictment or a judicial determination of probable cause, the affidavit accompanying the governor's requisition should contain more than conclusory statements. The affidavit should be in such form as would support a finding of probable cause for the issuance of an arrest or search warrant under the Fourth Amendment decisions of the United States Supreme Court.

In the case at bar, there is no indictment or document reflecting a prior judicial determination

of probable cause. The Arizona complaint[1] and arrest warrant[2] are both phrased in conclusory language which simply mirrors the language of

[1]

ARIZONA COMPLAINT
EXHIBIT A
East Phoenix I Precinct, Maricopa County,
State of Arizona.

STATE OF ARIZONA,
    Plaintiff,
        v.
HAROLD WILLIAM DORAN aka
    TED FOSTER,
    Defendant(s).

(FELONY)
THEFT OF MOTOR VEHICLE
OR IN THE ALTERNATIVE:
THEFT BY EMBEZZLEMENT

The complainant herein personally appears and, being duly sworn, complains (on information and belief) against

HAROLD WILLIAM DORAN aka TED FOSTER

charging that in EAST PHOENIX I Precinct, Maricopa County, Arizona: on or about the 18th day of DECEMBER, 1975, HAROLD WILLIAM DORAN aka TED FOSTER took from WAYNE W. KAHLER a motor vehicle described as follows, to-wit: 1973 FORD PICKUP, 1/2 TON, F100, 1975 California License Number 188MGL, VIN 10GCQ67368, with the intent to permanently deprive WAYNE W. KAHLER of such motor vehicle, all in violation of ARS, Sec. 13-672 (A) & (B), as amended 1975 and 13-1645.

OR IN THE ALTERNATIVE: THEFT BY EMBEZZLEMENT

That in EAST PHOENIX I Precinct, Maricopa County, Arizona: on or about the 18th day of DECEMBER, 1975, HAROLD WILLIAM DORAN aka TED FOSTER committed theft by embezzling from WAYNE W. KAHLER property, to-wit: One (1) 1973 FORD 1/2 TON PICKUP, F100, VIN 10GCQ67368, 1975 California License Number 188MGL, of the value of over $100.00, all in violation of ARS, Sec. 13-681, 13-682, as amended 1972, and 13-688, 13-671, 13-661, 13-662, 13-663.

(s) Richard Bishop
                    Complainant    C/L
Subscribed and sworn to before me on 1-7-76.

(s) Mary Jo Dixman
    Magistrate
    Title, J. P.

It is requested that a (X) Warrant, ( ) summons be issued.

It is, is not requested that Defendant appear for fingerprints and photograph.

Norval Jesperson,
Deputy County Attorney

the pertinent Arizona statutes. More importantly, the two supporting affidavits fail to set out facts which could justify a Fourth Amendment finding of probable cause for charging defendant with a crime.

The complaining police officer's initial affidavit[3]

---

ARIZONA WARRANT FOR ARREST
EXHIBIT B
East Phx. No. 1 Precinct, Maricopa County,
State of Arizona

THE STATE OF ARIZONA,
  Plaintiff,
    vs.
HAROLD WILLIAM DORAN aka
  TED FOSTER,
  Defendant(s).

TO ALL PEACE OFFICERS OF THE STATE OF ARIZONA:

A complaint has been filed in this court against HAROLD WILLIAM DORAN aka TED FOSTER charging that in East No. I Precinct, Maricopa County, Arizona, on or about the 18th day of Dec., 1975, the crime of Felony, to-wit: THEFT OF MOTOR VEHICLE OR IN THE ALTERNATIVE: THEFT BY EMBEZZLEMENT, has been committed.

I have found reasonable cause to believe that such offense(s) were committed and that the accused committed them, and reason to believe that the accused will not appear in response to a summons, or that a warrant is otherwise appropriate.

YOU ARE THEREFORE COMMANDED to arrest the accused and bring him before this court to answer the charges. If this court is unavailable, or if the arrest is made in another county, you shall take him before the nearest or most accessible magistrate. You may release him if he posts a secured appearance bond in the amount of _____ dollars ($      ).

                              (s) Mary Jo Dixman
                              Justice of the Peace

(Date) Jan. 7, 1976

\* \* \*

[3] The second affidavit involved an identification of a photograph of the defendant:

EXHIBIT D
IN RE: EXTRADITION OF
HAROLD WILLIAM DORAN aka TED FOSTER

STATE OF ARIZONA
  ss.
COUNTY OF MARICOPA

Thomas C. Bradley, No. 456, being duly sworn does depose and say that he is the Officer in Criminal No. 9204 versus Harold William

in support of the arrest warrant is factually void:

"EXHIBIT C

"County of Maricopa, State of Arizona

"The undersigned hereby declares:

"That he is currently employed as a peace officer for the City of Phoenix Police Department, Phoenix, Arizona.

"That, pursuant to his employment he has been assigned to investigate allegations that HAROLD WILLIAM DORAN aka TED FOSTER did violate Section(s) § 13-672(A)(B) and 13-1645.

"That, pursuant to said assignment, your declarant:

"1. Has contacted persons having knowledge of said offense and has prepared written reports and statements; and

"2. Has received and read written reports and statements prepared by others, known by your declarant to be law enforcement officers;

"All of which are included in the report consisting of 9 pages, which is presently an official record of this Department.

"That each of these documents is presently an official record of a law enforcement agency.

"WHEREFORE, your declarant prays that a warrant

---

Doran aka Ted Foster; that he has been shown a photograph dated 12/18/75, marked Exhibit "D" by reference attached and made a part hereof; that the person photographed is the same person who was charged with the crime of Theft of Motor Vehicle, OR IN THE ALTERNATIVE: Theft by Embezzlement, a felony, within the jurisdiction of EAST PHOENIX I Justice Court Precinct, County of Maricopa, as charged in the above-numbered cause.

FURTHER deponeth sayeth not.

Dated this 3rd day of February, 1976.

(s) Thomas C. Bradley
Thomas C. Bradley No. 456

Subscribed and sworn to by Thomas C. Bradley, before Beverly R. Parisi, a Notary Public, this 3rd day of February, 1976.

(s) Beverly R. Parisi
Notary Public
My Commission Expires:
March 11, 1977
[Photo attached].

issue for the herein-above-named defendant, that he be dealt with according to law.

"I declare under penalty of perjury that the foregoing is true and correct.

"Executed on this 3rd day of February, 1976, in Maricopa County.

"(s) Thomas C. Bradley
Declarant
Thomas Bradley No. 456
"City of Phoenix Police Dept.,
Phx., Az.
Address of Law Enforcement
Agency

"Subscribed and sworn to me this 3rd day of February, 1976.

"(s) Beverly R. Parisi
Notary Public
My Commission Expires:
March 11, 1977"

*Kirkland v Preston, supra,* discussed at length the requirements for Federal rendition. The Federal statute requires "an indictment found or an affidavit made before a magistrate * * * , charging the person demanded with having committed treason, felony, or other crime". 18 USC 3182.

The Michigan statute, based on the Uniform Criminal Extradition Act, *supra,* provides for the furnishing of "certified copies of the indictment returned, or information and affidavit filed, or of the complaint made to the judge or magistrate, and the warrant issued thereupon, stating the offense with which the accused is charged". Significantly the statute further provides that the "indictment, information, or affidavit made before the magistrate must *substantially charge* the person demanded with having committed a crime under

the law of that state". MCLA 780.3; MSA 28.1285(3). (Emphasis added.)

The police officer's affidavit in *Kirkland* read, in its pertinent part, as follows:

" * * * [O]n the 23rd day of July A.D., 1965, in the County and District aforesaid [Dade County] one Oliver Lee Kirkland & Elizabeth Maria Smith DID THEN AND THERE: unlawfully, wilfully, maliciously and feloniously set fire to and burn or cause to be burned a certain building, to wit: The Hut Bar, located at 2280 S. W. 32nd Avenue, City of Miami, Dade County, Florida, a further and more particular description of said bar being to the affiant unknown, the said bar being the property of one Fredrich Ritter." *Kirkland, supra,* 150; 385 F2d 672.

The *Kirkland* court found the warrant factually deficient and stated its holding thus:

"We hold that, for purposes of extradition, the section 3182 'affidavit' does not succeed in 'charging' a crime unless it sets out facts which justify a Fourth Amendment finding of probable cause."

The *Kirkland* result is also consistent with the Uniform Act's requirement that the indictment, information or affidavit "substantially charge" the person demanded with having committed a crime under the laws of the demanding state.

Judge J. Skelly Wright speaking for the court in *Kirkland* eloquently set forth at length its rationale for refusing extradition on the basis of an insufficient affidavit:

"There is no reason why the Fourth Amendment, which governs arrests, should not govern extradition arrests. Under its familiar doctrine arrests must be preceded by a finding of probable cause. When an

extradition demand is accompanied by an indictment, that document embodies a grand jury's judgment that constitutional probable cause exists. But when the extradition papers rely on a mere affidavit, even where supported by a warrant of arrest, there is no assurance of probable cause unless it is spelled out in the affidavit itself. Thus Fourth Amendment considerations require that before a person can be extradited on a Section 3182 affidavit the authorities in the asylum state must be satisfied that the affidavit shows probable cause.

\* \* \*

"The law appreciates the hardship which extradition can involve: not only the suspension of one's liberty, but his deportation from the state in which he lives into another jurisdiction which may be hundreds of miles from his home. The law accordingly surrounds the accused with considerable procedural protection to stave off wrongful rendition. It is consistent with this concern for the accused's just treatment to recognize his right to require official confirmation of probable cause in the asylum state before extradition. This right to probable cause confirmation seems especially appropriate in view of the fact that the accused will have no access to an evidentiary preliminary hearing on probable cause until he finally arrives in the accusing jurisdiction.

"In addition, the interests of the asylum state are advanced by its own probable cause determination. For it would be highhanded to compel that jurisdiction to lend its coercive authority, and the processes of its law, against even its own citizens in aid of an enterprise the key details of which remain in the dark. If, as here, it turns out that the prosecution against the fugitive is unfounded, the asylum state will have expended its resources and given the legitimizing stamp of its judiciary to a cause which is at best futile, at worst arbitrary.

"Recognizing a probable cause requirement in Section 3182, moreover, conflicts with no compelling interests elsewhere in the legal system. If the demanding state does have probable cause data, it will be no real inconvenience to record this evidence in the extradition

papers. Documenting probable cause in an affidavit is what the policeman in many jurisdictions, including the District of Columbia, must do if he is to secure an ordinary warrant for an arrest or search. And governors, or *habeas corpus* judges, will hardly be significantly burdened by having to study written submissions for probable cause in extradition cases.

"From all these considerations the court draws the conclusion that the terms of 18 USC 3182 are not met unless the affidavit indicates to the asylum state executive that there is probable cause for believing the accused guilty and that *habeas corpus* is the appropriate remedy to test the validity of his judgment. Since the Florida Section 3182 affidavit was insufficient and this defect was not cured in the time provided by the court, release of the prisoners was mandatory." (Footnotes omitted.) *Kirkland, supra,* 154–155; 385 F2d 676–677.

The *Kirkland v Preston* view that the Fourth Amendment applies to extradition warrants has been adopted by the United States Courts of Appeals for the First and Third Circuits. See *Ierardi v Gunter,* 528 F2d 929, 930–931 (CA 1, 1976) (where the court concluded that *Gerstein v Pugh,* 420 US 103; 95 S Ct 854; 43 L Ed 2d 54 [1975], "requires a judicial determination of probable cause as a prerequisite to interstate extradition".); and *United States ex rel Grano v Anderson,* 446 F2d 272 (CA 3, 1971).

The *Kirkland* holding has also been adopted by the Supreme Courts of Colorado and Nevada, a New York intermediate appellate court and a Connecticut trial court. See *United States ex rel Mayberry v Yeager,* 321 F Supp 199, 211 (D NJ, 1971); *Pippin v Leach,* 188 Colo 385; 534 P2d 1193 (1975) (refusing to extradite to Michigan because the affidavit, "replete with conclusions and bald allegations of criminal conduct without supporting facts", failed to "set forth some of the underlying

circumstances surrounding the crime charged, as well as an adequate identification of the source or sources of the information set forth in the affidavit".); *Sheriff v Thompson,* 85 Nev 211; 452 P2d 911 (1969); *People ex rel Cooper v Lombard,* 45 AD2d 928; 357 NYS2d 323 (1974) ("the asylum State has a vital interest in the liberty of its citizens and other inhabitants, and since it is only a slight burden on a demanding State to show probable cause for the issuance of a warrant of arrest * * * we join the Second Department in adopting the holding of *Kirkland v Preston.");* *Brode v Power,* 31 Conn Sup 411; 332 A2d 376 (1974).[4]

In *Williams v Wayne County Sheriff,* 395 Mich 204, 238; 235 NW2d 552 (1975), we adverted to but did not decide the instant question. An equally divided Court affirmed the denial of a petition for writ of *habeas corpus* sought by a Michigan resident resisting extradition. Three Justices of this Court stated that the courts of this state will not look behind the face of an *indictment.* Three Justices stated that *Kirkland v Preston* "held that a requisition affidavit cannot constitutionally support a rendition arrest unless that affidavit sets out facts which justify a Fourth Amendment find-

[4] The Supreme Courts of Illinois, Indiana and South Dakota have rejected the *Kirkland v Preston* view on the ground that the asylum state should not inquire into the regularity of the papers issued by the demanding state. It appears that there are other cases going both ways and, no doubt, there are other rationales.

*See People ex rel Kubala v Woods,* 52 Ill 2d 48; 284 NE2d 286, 290 (1972) (extraditing to Michigan on a conclusory affidavit; there were factual affidavits but they were made before a notary public and not a magistrate and, therefore, said the court, "will not support the issuance of the rendition warrant"; the court recognized that "it is highly desirable that the affidavit charging a crime in an extradition proceeding recite sufficient facts to show probable cause"); *Bailey v State,* 260 Ind 448, 452; 296 NE2d 422, 425 (1973); *Wellington v State,* — SD —; 238 NW2d 499, 503 (1976).

ing of probable cause" and would have allowed plaintiff to introduce proofs tending to show that the indictment was a forgery.

The court in *Kirkland v Preston,* distinguishing between an indictment and an affidavit, indicated that its holding would not extend to an indictment. Our holding in the instant case does not apply to an indictment. Like the court in *Kirkland,* our holding only applies to an *affidavit.*

In this state, although the statute provides that an arrest warrant shall issue "[i]f it appears from such examination" that an offense has in fact been committed, the practice has not been to conduct an examination to establish probable cause. *People v Burrill,* 391 Mich 124, 129; 214 NW2d 823 (1974). MCLA 766.3; MSA 28.921. Here, however, in all felony and some misdemeanor cases the accused is entitled to a prompt preliminary examination. It is not clear whether there was an independent judicial determination of probable cause made by the Arizona magistrate before issuance of the governor's requisition.

However, the question presented by this case is broader than whether the Federal or state statutes provide for a showing of probable cause. The Fourth Amendment permits an arrest only on probable cause. Here there has been no showing of probable cause, only conclusory statements in an affidavit. In the light of the Michigan practice of issuing arrest warrants without requiring a showing of probable cause, there is no reason to assume that the Arizona affidavit was made upon a showing, not of record, of probable cause.

While the invalidity of an arrest warrant does not affect the jurisdiction of a court to try the charge for which the offender was arrested, evidence seized incident to an arrest pursuant to an

invalid arrest warrant will be suppressed unless the arresting officer himself had factual information constituting probable cause for arrest. *People v Burrill, supra,* 132–136. Here, the Michigan authorities have insufficient factual information constituting probable cause to detain or render the defendant on the Arizona charge.

To be sure, "[t]he guilt or innocence of the accused as to the crime of which he is charged may not be inquired into by the governor or in any proceeding after the demand for extradition". MCLA 780.19; MSA 28.1285(19). However, this statute must be construed consistently with the Fourth Amendment preclusion of arrest and detention without probable cause. It is not suggested that the Michigan courts inquire into the underlying facts. It is determined rather that Michigan may not arrest, detain and render to the demanding state a person accused of a crime unless that state submits an indictment or a judicial determination of probable cause or adequate factual affidavit(s) reflecting probable cause.

Where there has been no indictment or judicial determination of probable cause in the demanding state, a requirement that the demanding state's affidavit set forth facts which support a determination of probable cause safeguards citizens and other persons found in the asylum state against abuse of the extradition process.

The Arizona warrant and supporting affidavit(s) are obviously insufficient and this defect has not been cured. The trial court is reversed and the release of the prisoner (defendant) is ordered forthwith.[5]

---

[5] In *Ierardi, supra,* the First Circuit granted *habeas corpus* relief and dismissed the prisoner from the custody of the governor's warrant. The federal proceedings were instituted after the prisoner had failed to obtain relief from the Supreme Judicial Court of Massachu-

KAVANAGH, C. J., and WILLIAMS, LEVIN, COLE-MAN, FITZGERALD, and RYAN, JJ., concurred with BLAIR MOODY, JR., J.

---

setts. The First Circuit went further than the District of Columbia Circuit by requiring a judicial determination of probable cause.

In *Grano supra,* the Third Circuit proceedings also were instituted after the prisoner had exhausted his state remedies. The district court allowed the demanding state to submit supplemental affidavits and on that basis found probable cause. The Third Circuit affirmed that finding, one judge dissenting on the ground that the governor of the demanding state should reconsider his requisition on the supplemented record before the asylum state acts on his otherwise deficient demand.

In *Kirkland v Preston, supra,* the District of Columbia Circuit released the prisoners after the Florida authorities failed to cure the defective affidavit.

The defendant in this case has been in custody since December 18, 1975; we believe it appropriate that he be released.